UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSEVIER INC., BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING, CENGAGE LEARNING, INC., MCGRAW HILL LLC, and PEARSON EDUCATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DOES 1 - 86 d/b/a 7YEC.COM, ALIBABADOWNLOAD.COM, APLUSTBSM.BLOGSPOT.COM, BOOSTGRADE.INFO, BUDDIEZ4U.MYSHOPIFY.COM, BUY-SOLUTIONS-MANUAL.COM, BUYTESTBANKONLINE.COM, CANADIANTESTBANKSOLUTIONS.BLOGSPOT.COM, COLLEGESTUDENTTEXTBOOK.ORG, CYBERTESTBANK.COM, DIGITALTESTBANKS.COM, DIGTEXT.COM, EBOOKAS.COM, EBOOKENTRY.COM, ETESTBANKS.COM, FINDTESTBANKS.COM, HOMETESTBANKS.COM, HWPREMIUM.COM, INSTRUCTORACCESS.COM, MAXIZZY.MYSHOPIFY.COM, NURSINGSTUDENTSHELP.COM, NURSINGTB.COM, NURSINGTESTBANK.INFO, NURSINGTESTBANK0.INFO, NURSINGTESTBANKS.CO, NURSINGTESTBANKTANK.COM, REALNURSINGTESTBANK.COM, RHYIBLE.MYSHOPIFY.COM, SOLUTIONSMANUAL888.WORDPRESS.COM, SOLUTIONTESTBANK.COM, SOLUTIONTESTBANK.NET, STUDENT-SAVER.BLOGSPOT.COM, STUDENTPUSH.COM, STUDENTS-EXAMS.COM, SWEETGRADES.COM, TB-BOOK.COM, TBMIRATE.COM, TEST-BANK-SOLUTION.BLOGSPOT.COM, TESTBANK.CC, TESTBANK.CO.COM, TESTBANK.SOLUTIONS, TESTBANK101.COM, TESTBANK2020.COM, | **Civil Action No.** |

| |
|---|
| TESTBANKAIR.COM, TESTBANKANDSOLUTIONS.BLOGSPOT.COM, TESTBANKAREA.COM, TESTBANKBASE.COM, TESTBANKBYTE.COM, TESTBANKCLASSES.COM, TESTBANKCLICK.COM, TESTBANKDATA.COM, TESTBANKDB.COM, TESTBANKDEALS.COM, TESTBANKDOC.COM, TESTBANKFILES.COM, TESTBANKFIRE.COM, TESTBANKGRADE.COM, TESTBANKGROUP.COM, TESTBANKHOST.COM, TESTBANKHUT.COM, TESTBANKINC.COM, TESTBANKKING.COM, TESTBANKLAB.COM, TESTBANKLIB.COM, TESTBANKMANUALS.COM, TESTBANKNSOLUTIONS.COM, TESTBANKPAPER.COM, TESTBANKPASS.COM, TESTBANKPLANET.COM, TESTBANKQUESTIONS.COM, TESTBANKREAL.COM, TESTBANKS-SOLUTIONMANUAL.COM, TESTBANKS.NET, TESTBANKSHOP.NET, TESTBANKSLIST.WORDPRESS.COM, TESTBANKSOLUTION01.COM, TESTBANKSOLUTIONMANUAL.COM, TESTBANKSTER.COM, TESTBANKTEAM.COM, TESTBANKTOP.COM, TESTBANKTREE.COM, TESTBANKWORLD.ORG, TESTBANKY.COM, TESTMANGO.COM, TEXTBOOKSOLUTIONS.CC,  and UNIVERSALSTUDYGUIDES.COM, <br><br>                    Defendants. |

## DECLARATION OF KELLY MCCANN

I, **KELLY MCCANN**, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am employed by Elsevier Inc. ("Elsevier") as the Director of Commercial and Channel Strategy.  I have worked for Elsevier for over 13 years.  Among other responsibilities, I focus on Elsevier's efforts to protect its intellectual property, including the protection of its

2

copyrights and trademarks in connection with online piracy matters.

2. I submit this declaration in support of Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Issue, Order Authorizing Expedited Discovery, and Order Authorizing Alternate Service (the "Application") in the above-captioned case. I have knowledge of the facts stated herein based on personal knowledge and my review of the documents, files, websites, and other items referenced herein. If called upon to do so, I am able to testify competently to the matters as stated herein.

**ELSEVIER'S BUSINESS AND VALUABLE WORKS AND MARKS**

3. Elsevier is a leading educational publisher in the United States. Elsevier develops, markets, distributes, licenses, and sells a comprehensive range of traditional and digital educational content and tools to professionals, educators, and students. Elsevier's publications include physical and digital textbooks. These textbooks are widely available in the United States marketplace to consumers for a fee. They are sold through direct sales channels and via legitimate distributors and stores, including through online sales, and are among the most popular and widely used titles in their fields.

4. Elsevier also publishes test banks, which are important supplemental materials to textbooks. Test banks are sets of questions, and, in some instances, corresponding answers, to be used by the professor or instructor who assigned the textbook for his or her course. Professors and instructors use these supplemental materials to create lesson plans, homework assignments, exams, and/or for grading purposes. Accordingly, to preserve their pedagogical value, these supplemental materials are not generally distributed to the public.

5. Test banks are specific to a given textbook or series of textbooks. As such, these supplemental materials are tailored to the pedagogical approach of the works to which they

correspond.

6. Test banks contain additional content beyond what is in the textbook. For instance, in the way that creative efforts go into creating or selecting questions, whether for inclusion in the textbook or its corresponding test bank, similar creative efforts go into developing the answers in the test banks. Countless decisions are made concerning answer choices, wording, examples, approach, depth, and other substantive details.

7. Elsevier is the copyright owner of, and/or the owner of exclusive rights under copyright in, among many others, its works or derivative works described on **Exhibit A** to the Complaint (the "Authentic Works"). Elsevier or its predecessors or affiliates have obtained copyright registrations, duly issued by the United States Copyright Office, covering the Authentic Works.

8. Elsevier is the owner or the exclusive licensee of, among others, its trademarks and/or service marks described on **Exhibit B** to the Complaint (the "Marks"). Elsevier or its predecessors or affiliates have duly registered the Marks on the Principal Register of the United States Patent and Trademark Office. Along with the Marks, Elsevier publishes its works under a variety of other valuable and recognizable imprints, or brands, described on **Exhibit C** to the Complaint, including, for example, Academic Press, Butterworth-Heinemann, Mosby, and Saunders, among others. Elsevier has invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with its works, trademarks, imprints, and brands.

## DEFENDANTS' INFRINGING ACTIVITIES

9. Defendants own, control, and/or operate websites that reproduce test banks, and sometimes Elsevier's textbooks, and sell and distribute those copies of Elsevier's works to students

and other consumers in the United States and elsewhere.  Elsevier has not granted any license or otherwise authorized Defendants to copy, distribute, or sell electronic (or other) copies of its works.

10. Defendants also use identical or substantially indistinguishable reproductions of Elsevier's trademarks in connection with the sale and/or offering for sale of unauthorized copies of Elsevier's works.  Elsevier has not granted any license or otherwise authorized Defendants to use Elsevier's trademarks in advertising or selling Defendants' goods and services.

11. Through their infringing websites, Defendants sell copies of the Authentic Works identified on Exhibit A to the Complaint.  The Authentic Works included on Exhibit A (and, in turn, the Marks on Exhibit B) are by no means an exhaustive list of Elsevier's works sold by Defendants.

12. At Elsevier's request, Dan Seymour at Oppenheim + Zebrak, LLP ("O+Z"), and a team working under his supervision, obtained copies of the Authentic Works from Defendants' websites, through purchases or free samples.  I confirmed that the files obtained by Mr. Seymour and his team are unauthorized copies of the Authentic Works.

13. Additionally, at Elsevier's request, Mr. Seymour and his team captured evidence of listings, product pages, advertisements, or other similar webpages on or from Defendants' websites.  I reviewed these materials and confirmed that they show Defendants' offers to sell unauthorized copies of Elsevier's works and display unauthorized and identical or substantially indistinguishable reproductions of the relevant Marks.

14. Elsevier does not currently know the Defendants' true identities and locations because Defendants hide behind their infringing websites and the anonymity of the internet.

**HARM TO ELSEVIER**

15. Elsevier invests significant monies to publish its copyrighted works. Elsevier makes substantial investments, for example, in content creation and in promotion of its copyrighted works published under its trademarks. Defendants' sale of unauthorized copies of Elsevier's test banks steals the fruits of Elsevier's and its authors' creative efforts and monetary investments and diminishes interest among teaching professionals to use the associated textbooks for their classes. A substantial decline in their income could cause Elsevier to cease publishing one or more deserving books. This would adversely impact the creation of new works, scholarly endeavors, and the education of students in the United States.

16. By providing students with unauthorized access to materials that teaching professionals use for assignments and on exams, Defendants' activity undermines the integrity of the educational process, as well as diminishes the value of Elsevier's test banks and, as a result, the corresponding textbooks. Professors and instructors are often reluctant to adopt a textbook for their course if the test bank for the book is freely and widely available.

17. Moreover, Defendants' sales corrupt the educational process by facilitating cheating. Students who cheat to obtain better grades instead of studying and asking questions are depriving themselves of valuable learning, taking unfair advantage of students who do not cheat, and depriving their professors or instructors of valuable feedback. Cheating can also lead to unqualified students entering the workforce, thus impacting the general public. This problem is heightened, for example, in the medical field (in which Elsevier publishes numerous works), where qualifications impact health and safety. Moreover, when the utility and value of Elsevier's test banks are diminished, even greater demands are placed on educators, causing them to re-invent the wheel and cutting into valuable time that could be used to otherwise enhance the educational experience. Indeed, where a test bank has become available to students through cheating websites

like Defendants', it is not uncommon for professors or instructors who have adopted the corresponding textbook to express concerns to Elsevier and seek assistance to help mitigate the harm to the pedagogical process caused by the illegal distribution of these materials. And as Elsevier's supplementary materials comprise a key part of the educational process, when they are copied and distributed without authorization, the result is also harm to Elsevier's reputation in the educational communities it serves and beyond.

18. I am not aware of any counterclaims Defendants could have against Elsevier.

I declare under penalty of perjury that the foregoing is true and correct.

_____
KELLY MCCANN

Executed on this 8th day of October 2020.