# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ELSEVIER INC., BEDFORD, FREEMAN & WORTH
PUBLISHING GROUP, LLC d/b/a MACMILLAN
LEARNING, CENGAGE LEARNING, INC.,
MCGRAW HILL LLC, and PEARSON EDUCATION,
INC.,

           Plaintiffs,

    v.

DOES 1 - 86 d/b/a 7YEC.COM,
ALIBABADOWNLOAD.COM,
APLUSTBSM.BLOGSPOT.COM, BOOSTGRADE.INFO,
BUDDIEZ4U.MYSHOPIFY.COM, BUY-SOLUTIONS-
MANUAL.COM, BUYTESTBANKONLINE.COM,
CANADIANTESTBANKSOLUTIONS.BLOGSPOT.CO
M, COLLEGESTUDENTTEXTBOOK.ORG,
CYBERTESTBANK.COM,
DIGITALTESTBANKS.COM, DIGTEXT.COM,
EBOOKAS.COM, EBOOKENTRY.COM,
ETESTBANKS.COM, FINDTESTBANKS.COM,
HOMETESTBANKS.COM, HWPREMIUM.COM,
INSTRUCTORACCESS.COM,
MAXIZZY.MYSHOPIFY.COM,
NURSINGSTUDENTSHELP.COM, NURSINGTB.COM,
NURSINGTESTBANK.INFO,
NURSINGTESTBANK0.INFO,
NURSINGTESTBANKS.CO,
NURSINGTESTBANKTANK.COM,
REALNURSINGTESTBANK.COM,
RHYIBLE.MYSHOPIFY.COM,
SOLUTIONSMANUAL888.WORDPRESS.COM,
SOLUTIONTESTBANK.COM,
SOLUTIONTESTBANK.NET, STUDENT-
SAVER.BLOGSPOT.COM, STUDENTPUSH.COM,
STUDENTS-EXAMS.COM,  SWEETGRADES.COM,
TB-BOOK.COM, TBMIRATE.COM, TEST-BANK-
SOLUTION.BLOGSPOT.COM, TESTBANK.CC,
TESTBANK.CO.COM, TESTBANK.SOLUTIONS,
TESTBANK101.COM, TESTBANK2020.COM,
TESTBANKAIR.COM,
TESTBANKANDSOLUTIONS.BLOGSPOT.COM,
TESTBANKAREA.COM, TESTBANKBASE.COM,

**Civil Action No.**

TESTBANKBYTE.COM, TESTBANKCLASSES.COM,
TESTBANKCLICK.COM, TESTBANKDATA.COM,
TESTBANKDB.COM, TESTBANKDEALS.COM,
TESTBANKDOC.COM, TESTBANKFILES.COM,
TESTBANKFIRE.COM, TESTBANKGRADE.COM,
TESTBANKGROUP.COM, TESTBANKHOST.COM,
TESTBANKHUT.COM, TESTBANKINC.COM,
TESTBANKKING.COM, TESTBANKLAB.COM,
TESTBANKLIB.COM, TESTBANKMANUALS.COM,
TESTBANKNSOLUTIONS.COM,
TESTBANKPAPER.COM, TESTBANKPASS.COM,
TESTBANKPLANET.COM,
TESTBANKQUESTIONS.COM,
TESTBANKREAL.COM, TESTBANKS-
SOLUTIONMANUAL.COM, TESTBANKS.NET,
TESTBANKSHOP.NET,
TESTBANKSLIST.WORDPRESS.COM,
TESTBANKSOLUTION01.COM,
TESTBANKSOLUTIONMANUAL.COM,
TESTBANKSTER.COM, TESTBANKTEAM.COM,
TESTBANKTOP.COM, TESTBANKTREE.COM,
TESTBANKWORLD.ORG, TESTBANKY.COM,
TESTMANGO.COM, TEXTBOOKSOLUTIONS.CC,  and
UNIVERSALSTUDYGUIDES.COM,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE*
APPLICATION FOR TEMPORARY RESTRAINING ORDER, EXPEDITED
DISCOVERY ORDER, ORDER AUTHORIZING ALTERNATE
SERVICE, AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ...........................................................................................2

    A.  Plaintiffs' Businesses and Their Copyrighted Works.............................................2

    B.  Defendants' Illegal Online Businesses ..................................................................4

ARGUMENT ...............................................................................................................8

I.      THIS COURT HAS PERSONAL JURISDICTION ....................................................8

II.    DEFENDANTS MEET THE STANDARD FOR A TEMPORARY
       RESTRAINING ORDER AND PRELIMINARY INJUNCTION.............................11

    A.  Plaintiffs Are Likely to Succeed on All of Their Claims Against Defendants......12

    B.  Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant
       Immediate Relief.................................................................................................16

    C.  Plaintiffs Satisfy the Remaining Two Equitable Factors......................................17

III.   PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE
       TRANSFER OF DEFENDANTS' ASSETS .............................................................17

    A.  The Court Possesses Ample Authority Under the Federal Rules and Its
       Inherent Equitable Powers to Attach Defendants' Assets ....................................18

    B.  The Court Also Possesses Authority Under New York Law to Attach the
       Defendants' Assets..............................................................................................21

    C.  *Ex Parte* Relief Is Warranted .............................................................................23

    D.  The Court Should Require No Bond or, in the Alternative, a Minimal Bond .......24

IV.   PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY ............................25

    A.  Legal Standard ....................................................................................................25

    B.  Plaintiffs Satisfy the Factors for Good Cause......................................................26

**TABLE OF CONTENTS**
(Continued)

V.    PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING SERVICE
      OF PROCESS BY EMAIL ..................................................................................28

      A.  Service of Process by Email Is Not Prohibited by International Agreement ........30

      B.  Service of Process by Email Is Reasonably Calculated to Provide Notice to
          Defendants ............................................................................................................31

CONCLUSION...................................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
   414 F.3d 400 (2d Cir. 2005)............................................................................16

*3M Co. v. Performance Supply, LLC*,
   No. 20-cv-02949-LAP-KNF, 2020 WL 2115070 (S.D.N.Y. May 4, 2020)...........................17

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th. Cir. 2001) ..........................................................................14

*Admarketplace, Inc. v. Tee Support, Inc.*,
   No. 13 Civ. 5635 (LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013)..............................27

*Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L.*,
   910 N.Y.S.2d 418 (N.Y. App. Div. 2010) ...............................................................30

*Arista Records LLC v. Doe*,
   604 F.3d 110 (2d Cir. 2010)..............................................................................14

*Ayyash v. Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. 2005) .........................................................................24

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990)............................................10

*Bedford, Freeman & Worth Publ. Grp., LLC v. Trung Kien Nguyen*,
   No. 19-cv-10524-LAK (S.D.N.Y. Nov. 14, 2019) ....................................................2

*Benham Jewelry Corp. v. Aron Basha Corp.*,
   97 CIV. 3841 (RWS), 1997 WL 639037 (S.D.N.Y. Oct. 14, 1997).......................................27

*Brenntag Int'l Chems., Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999)..............................................................................21

*Broadfoot v. Diaz*,
   245 B.R. 713 (Bankr. N.D. Ga. 2000) ...................................................................32

*Capitol Records, Inc. v. MP3tunes, LLC*,
   No. 07 Civ. 9931 (WHP), 2008 WL 4450259 (S.D.N.Y. Sept. 29, 2008) .............................11

*Cengage Learning, Inc. v. Doe 1 d/b/a binghfran*,
   No. 18-cv-7382-VM (S.D.N.Y. Aug. 15, 2018).......................................................2

*Cengage Learning, Inc. v. Doe 1*,
  18-CV-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) ............................................21

*Cengage Learning, Inc. v. Trung Kien Nguyen*,
  Case No. 20-cv-769-JGK (S.D.N.Y Jan. 29, 2020) ............................................................2, 26

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ..........................................................................................10, 11

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...................................................................................11

*Complex Sys., Inc. v. ABN Amro Bank N.V.*,
  No. 08 Civ. 7497 (KBF), 2014 WL 1883474 (S.D.N.Y. May 9, 2014) ................................17

*Considar, Inc. v. Redi Corp., Establishment*,
  238 A.D.2d 111, 655 N.Y.S.2d 40 (N.Y. App. Div. 1997) ..................................................23

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006) ..................................................................................................13

*Digital Sin, Inc. v. John Does 1-176*,
  279 F.R.D. 239 (S.D.N.Y. 2012) .........................................................................................27

*Doctor's Assocs. v. Distajo*,
  107 F.3d 126 (2d Cir. 1997) .................................................................................................26

*Elsevier, Inc. v. Does 1-10*,
  No. 16-Civ.-1245 (RA) (S.D.N.Y. Feb. 2, 2016) .................................................................22

*EnviroCare Techs., LLC v. Simanovsky*,
  No. 11-CV-3458 (JS)(ETB), 2012 WL 2001443 (E.D.N.Y. June 4, 2012) ..........................11

*Experience Hendrix, LLC v. Chalpin*,
  461 F. Supp. 2d 165 (S.D.N.Y. 2006) .................................................................................21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) .............................................................................................................14

*In re Feit & Drexler, Inc.*,
  760 F.2d 406 (2d Cir. 1985) .................................................................................................20

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
  696 F. Supp. 2d 368 (S.D.N.Y. 2010) .................................................................................16

*FTC v. PCCare247 Inc.*,
  No. 12-Civ.-7189 (PAE), 2013 WL 841037 (S.D.N.Y. Mar. 7, 2013).................29, 30, 31, 32

*Graubard Mollen Dannett & Horowitz v. Kostantinides*,
  709 F. Supp. 428 (S.D.N.Y. 1989) .......................................................24

*ITC Entm't, Ltd. v. Nelson Film Partners*,
  714 F.2d 217 (2d Cir. 1983)................................................................24

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998)................................................................10

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
  306 F. Supp. 2d 482 (S.D.N.Y. 2004) .................................................24

*Laboratorios Rivasm, SRL v. Ugly & Beauty, Inc.*,
  No. 11-cv-5980-RA-JLC, 2013 WL 5977440 (S.D.N.Y. Nov. 12, 2013).............................19

*Libancell S.A.L. v. Republic of Leb.*,
  No. 06 Civ. 2765 (HB), 2006 WL 1321328 (S.D.N.Y. May 16, 2006)................................25

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*,
  No. 15 Civ. 8459, 2016 WL 3748480 (S.D.N.Y. July 8, 2016) ................................11

*Lions Gate Films Inc. v. Does*,
  2:14-CV-06033-MMM, 2014 WL 3895240 (C.D. Cal. Aug. 8, 2014) ................................21

*Malibu Media, LLC v. Doe*,
  No. 12 Civ. 2950 (JPO) 2012 WL 2001968 (S.D.N.Y. June 1, 2012) ................................27

*Marks Org., Inc. v. Joles*,
  784 F. Supp. 2d 322 (S.D.N.Y. 2011) .................................................17

*McGraw Hill LLC v. Does 1-63*,
  Case No. 20-cv-6368-GHW (S.D.N.Y Aug. 12, 2020) ...................................2, 13, 19, 25, 27

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*,
  375 F. Supp. 2d 252 (S.D.N.Y. 2005) .................................................12

*McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*,
  295 F. Supp. 3d 404 (S.D.N.Y. 2017) .................................................11

*McGraw-Hill Global Educ. Holdings v. Does 1-11*,
  No. 16-cv-9029-KBF (S.D.N.Y. Nov. 21, 2016)......................................................2

*McGraw-Hill Global Educ. Holdings v. Khan*,
  No. 16-cv-9030-PGG (S.D.N.Y. Nov. 21, 2016) ..................................................2

*North Face Apparel Corp. v. Moler*,
  No. 12-Civ.-6688 (JGK) (GWG), 2015 WL 4385626 (S.D.N.Y. July 16, 2015)...................19

*Pearson Educ., Inc. v. ABC Books LLC*,
  19-cv-7642-RA (S.D.N.Y. Aug. 15, 2019)...............................................................2

*Pearson Educ., Inc. v. Doe 1 d/b/a atmi7654*,
  18-cv-402-DLC (S.D.N.Y. Jan. 17, 2018)..............................................................2

*Pearson Educ., Inc. v. Jabber*,
  No. 16-cv-1244-UA (S.D.N.Y. Feb. 29, 2016).......................................................2

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  640 F.3d 497 (2d Cir. 2011)...................................................................................12

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  946 N.E.2d 159 (N.Y. 2011)..................................................................................12

*Philip Morris USA Inc. v. Veles Ltd.*,
  No. 06-CV-2988 (GBD), 2007 WL 725412 (S.D.N.Y. Mar. 13, 2007)...........30, 32

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961)...................................................................................16

*Prediction Co. v. Rajgarhia*,
  No. 09-Civ.-7459 (SAS), 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010)...........31, 32

*Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC*,
  587 F. Supp. 2d 548 (S.D.N.Y. 2008) ...................................................................20

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of
  Va.*,
  144 F. Supp. 2d 241 (S.D.N.Y. 2001) ..............................................................20, 22

*Republic of Philippines v. Marcos*,
  806 F.2d 344 (2d Cir. 1986)...................................................................................20

*Rio Props., Inc. v. Rio Intern. Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .........................................................................30, 31

*RSM Prod. Corp. v. Fridman*,
  No. 06-Civ.-11512 (DLC), 2007 WL 1515068 (S.D.N.Y. May 24, 2007) ......29, 30

*Safadjou v. Mohammadi*,
  964 N.Y.S.2d 801 (N.Y. App. Div. 2013) .............................................................29

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010)........................................................................14, 16, 17

*Sea Carriers Corp. v. Empire Programs, Inc.*,
  No. 04 Civ. 7395 (RWS), 2006 WL 3354139 (S.D.N.Y. Nov. 20, 2006)..............21

*Serio v. Black, Davis & Shue Agency, Inc.*,
No. 05 Civ. 15 (MHD), 2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005)...................................22

*Snyder v. Energy, Inc.*,
857 N.Y.S.2d 442 (N.Y. Civ. Ct. 2007) ..................................................................30

*Twentieth Century Fox Film Corp. v. MOW Trading Corp.*,
749 F. Supp. 473 (S.D.N.Y. 1990) .........................................................................27

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.*,
No. 03 Civ. 8909 (RJH), 2003 WL 22889738 (S.D.N.Y. Dec. 8, 2003)................................25

*Warner Bros. Entm't v. Ideal World Direct*,
516 F. Supp. 2d 261 (S.D.N.Y. 2007) ....................................................................11

*WPIX, Inc. v. ivi, Inc.*,
691 F.3d 275, 287 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585 (2013) ................................19

*WPIX, Inc. v. ivi, Inc.*,
765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011) .............................................................19

*Williams v. Advert. Sex LLC.*,
231 F.R.D. 483 (N.D. W.Va. 2005)........................................................................32

*Yurman Design Inc. v. Chaindom Enters.*,
No. 99-cv-9307-JFK, 1999 WL 1075942 (S.D.N.Y. Nov. 29, 1999).....................................14

**Statutes**

15 U.S.C. § 1114.....................................................................................................15

15 U.S.C. § 1116.....................................................................................................13

15 U.S.C. § 1127.....................................................................................................16

17 U.S.C. § 106.......................................................................................................14

17 U.S.C. § 410.......................................................................................................15

17 U.S.C. § 501.......................................................................................................14

17 U.S.C. § 502.......................................................................................................13

17 U.S.C. § 504.......................................................................................................20

28 U.S.C. § 1338.....................................................................................................10

C.P.L.R. § 302 ..............................................................................................10, 11, 12, 13

C.P.L.R. § 308 .............................................................................................29, 30

C.P.L.R. § 6201 ...........................................................................................23, 24

C.P.L.R. § 6210 ................................................................................................25

C.P.L.R. § 6212 ................................................................................................23

Fed. R. Civ. P. 4 ..............................................................................28, 30, 31, 32

Fed. R. Civ. P. 26 .........................................................................................26, 27

Fed. R. Civ. P. 64 ..............................................................................................23

Fed. R. Civ. P. 65 ...........................................................................13, 20, 25, 26

Plaintiffs Elsevier Inc., Bedford, Freeman & Worth Publishing Group, LLC, d/b/a

Macmillan Learning, Cengage Learning, Inc., McGraw Hill, LLC, and Pearson Education, Inc.,

(collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of their *Ex*

*Parte* Application for Temporary Restraining Order, Expedited Discovery Order, Order

Authorizing Alternate Service, and Order to Show Cause for Preliminary Injunction (the

"Application").  Plaintiffs seek the requested relief against Defendants Does 1 – 86 (collectively,

"Defendants") because Defendants are intentionally and willfully reproducing infringing copies

of Plaintiffs' test banks and/or instructor solutions manuals ("ISMs") and selling them to

students to facilitate cheating.  Defendants' conduct not only undermines our educational system

and any sense of academic integrity, but it also grossly runs afoul of both federal copyright and

trademark law.

## PRELIMINARY STATEMENT

This is a case brought by some of the nation's largest and most well-respected higher-

education publishers against a group of scofflaws who operate websites devoted to copyright and

trademark infringement.  At the expense of Plaintiffs and the integrity of the academic process,

Defendants make infringing copies of Plaintiffs' copyrighted test banks and/or ISMs, which they

store in digital format on their computers and then distribute illegally to students for a profit.

Some Defendants also copy, distribute, and sell infringing copies of Plaintiffs' copyrighted

textbooks and/or infringe Plaintiffs' federally registered trademarks in connection with the

distribution, sale, or offering for sale of Plaintiffs' works.

Defendants engage in a practice that courts in this District and elsewhere uniformly

condemn.  Indeed, courts in this District have granted Plaintiffs' motions for comparable relief in

1

multiple cases involving digital piracy and counterfeiting of their works and trademarks.[1]  There is no defense for Defendants' brazenly illegal conduct.  Defendants are undoubtedly aware that their activities are illegal, yet persist in them nonetheless.  Without the injunctive relief and asset freeze Plaintiffs seek, Defendants will continue their infringement, causing irreparable harm to Plaintiffs and the public.  Such relief is especially critical now, as many college students are preparing to take mid-term and other fall semester tests.

Based on the nature and scope of Defendants' infringing activities, Plaintiffs will be entitled to substantial damages, totaling millions of dollars.  Given the circumstances, and based on Plaintiffs' experience combatting online piracy, Defendants are almost certainly infringing more pervasively than Plaintiffs are currently aware.  Online pirates rarely constrain their illegal activities to a single site, preferring to find multiple outlets for their illegal sales.  And when caught, they typically go to great lengths to continue their illegal conduct, while simultaneously concealing or destroying evidence of their infringement.  Moreover, to retain their illegal profits, these types of pirates typically move quickly to dissipate any assets available to satisfy, even in

---

[1] *See, e.g., McGraw Hill LLC v. Does 1-63*, No. 20-cv-6368-GHW, Aug. 12, 2020 Temporary Restraining Order ("TRO") (Dkt. No. 3) and Sept. 10, 2020 Preliminary Injunction ("PI") (Dkt. No. 41*); Cengage Learning, Inc. v. Trung Kien Nguyen*, No. 20-cv-769-JGK, Jan. 29, 2020 TRO (Dkt. No. 11) and Feb. 24, 2020 PI (Dkt. No. 14); *Bedford, Freeman & Worth Publ. Grp., LLC v. Trung Kien Nguyen,* No. 19-cv-10524-LAK, Nov. 14, 2019 TRO (Dkt. No. 3) and Dec. 10, 2019 PI (Dkt. No. 13); *Pearson Educ., Inc. v. ABC Books LLC*, 19-cv-7642-RA, Aug. 15, 2019 TRO (Dkt. No. 29) and Sept. 11, 2019 PI (Dkt. No. 33); *Cengage Learning, Inc. v. Doe 1  d/b/a binghfran*, No. 18-cv-7382-VM, Aug. 15, 2018 TRO (Dkt. No. 3) and Sept. 7, 2018 PI (Dkt. No. 26)*; Pearson Educ., Inc. v. Doe 1 d/b/a atmi7654*, 18-cv-402-DLC, Jan. 17, 2018 TRO (Dkt. No. 3) and Feb. 16, 2018 PI (Dkt. No. 34); *McGraw-Hill Global Educ. Holdings v. Khan*, No. 16-cv-9030-PGG, Nov. 21, 2016 TRO (Dkt. No. 3) and Dec. 5, 2016 PI (Dkt. No. 15) (case involving ISMs and test banks); *McGraw-Hill Global Educ. Holdings v. Does 1-11*, No. 16-cv-9029-KBF, Nov. 21, 2016 TRO (Dkt. No. 3) and Dec. 5, 2016 PI (Dkt. No. 13) (same); *Pearson Educ., Inc. v. Jabber*, No. 16-cv-1244-UA, Feb.29, 2016 TRO (Dkt. No. 13) and Mar. 8, 2016 PI (Dkt. No. 16) (same).  Copies of these orders are attached to the Declaration of Matthew I. Fleischman ("Fleischman Decl."), Exs 1-9.

small part, a Court's final judgment.

Accordingly, by this Application, Plaintiffs respectfully request:  (1) an order temporarily enjoining any further infringing activity, (2) an order temporarily restraining the assets in the accounts used by Defendants to receive funds or payments in connection with their illegal conduct; (3) leave to serve targeted expedited discovery to identify Defendants, including their names, addresses, and additional email addresses; Defendants' additional infringing websites; and Defendants' accounts used to receive, transfer, or send funds or payments in connection with their illegal activities; (4) an order authorizing Plaintiffs to serve Defendants by email; and (5) an order to show cause why a preliminary injunction should not issue prohibiting Defendants' continued infringement and restraining their assets until this case has been resolved.

## STATEMENT OF FACTS

### A.    Plaintiffs' Businesses and Copyrights and Trademarks

Plaintiffs are five of the leading educational publishers in the United States.  Plaintiffs develop, market, distribute, license, and sell a comprehensive range of traditional and digital educational content, including textbooks.  In particular, Plaintiffs' textbooks, which they sell to students and others, are among the most popular and widely used titles in their fields.  Compl. ¶ 100; *see also* Declaration of Kelly McCann ("McCann Decl.") ¶ 3; Declaration of Roger Naggar ("Naggar Decl.") ¶ 3; Declaration of Jessica Stitt ("Stitt Decl.") ¶ 3; Declaration of Steven Rosenthal ("Rosenthal Decl.") ¶ 3; Declaration of LaShonda Morris ("Morris Decl.") ¶ 3 (collectively, "Publishers' Decls.").

Plaintiffs also publish ISMs and test banks, which are important supplemental materials to textbooks.  Compl. ¶ 101.  ISMs are guides that provide detailed answers and solutions to questions contained within the textbook.  Compl. ¶ 101; Stitt Decl. ¶ 4; Rosenthal Decl. ¶ 4;

Morris Decl. ¶ 4.  Test banks are sets of questions, and, in some instances, corresponding answers, which are intended to be used only by the professor who assigned the textbook for his or her course.  Compl. ¶ 101; Publishers' Decls. ¶ 4.  Professors and instructors use these supplemental materials to create lesson plans, homework assignments, exams, and/or for grading purposes.  *Id.*  Plaintiffs develop these materials to assist educators and are cautious to limit the access to these supplemental materials*.  Id.*  Indeed, to preserve their pedagogical value, these supplemental materials are not generally sold or distributed to the public.  *Id.*

Plaintiffs' test banks and ISMs are specific to a given textbook or series of textbooks and, therefore, specifically tailored to the pedagogical approach of the works to which they correspond.  Compl. ¶ 102; Publishers' Decls. ¶ 5.  Test banks and ISMs contain additional content beyond what is in the textbook.  Compl. ¶ 103; Publishers' Decls. ¶ 6.  Extensive creative efforts go into creating or selecting questions and answers or solutions in Plaintiffs' test banks and ISMs.  *Id.*

When students obtain unauthorized access to test banks and ISMs, the integrity of the educational process is compromised because students can cheat.  Compl. ¶¶ 101, 121; Publishers' Decls. ¶ 16.  Among other harms, students who cheat to obtain better grades deprive themselves of valuable learning, take unfair advantage of students who do not cheat, and deprive their professors or instructors of valuable feedback, ultimately placing greater demands on them. *Id*.  Compl. ¶ 121; Publishers' Decls. ¶ 17.  Further, Defendants' release of Plaintiffs' supplemental materials to students not only infringes Plaintiffs' rights in those materials, but also undermines the value of the materials and the underlying textbooks.  Compl. ¶ 101; Publishers' Decls. ¶ 16.  Many professors and instructors are reluctant to adopt for use a textbook for which the supplemental materials are widely available.  *Id.*

4

Exhibit A to the Complaint contains a representative list of Plaintiffs' copyrighted, registered works that Defendants have infringed.  Compl. Ex. A; Publishers' Decls. ¶ 7. Plaintiffs own or control the copyright in each of the works or derivative works listed on Exhibit A (the "Authentic Works"), among many others.  Compl. ¶ 105; Publishers' Decls. ¶ 7.  Given the large scale of infringement on Defendants' illegal websites, which sometimes include hundreds of pages or more of offerings, and frequently add "new arrivals," Exhibit A is, by necessity, a non-exclusive list of Plaintiffs' Authentic Works.  Compl. ¶¶ 105, 106, 119.

With respect to Plaintiffs' trademark claims, Exhibit B to the Complaint contains a non-exclusive, representative list of Plaintiffs' trademarks that Defendants have infringed.  Compl. Ex. B; Publishers' Decls. ¶ 8.  Plaintiffs are also the owners or the exclusive licensees of, among others, their respective trademarks and/or service marks described on Exhibit B to the Complaint (the "Marks").  Compl. ¶ 106; Publishers' Decls. ¶ 8.  Plaintiffs (and/or their predecessors) have invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs, their works, and their trademarks.  Compl. ¶ 104; Publishers' Decls. ¶ 8.

## B.  <u>Defendants' Illegal Online Businesses</u>

Defendants, respectively, do business through the websites identified in paragraphs 10-95 of the Complaint (and also identified in Plaintiffs' Proposed *Ex Parte* Order).  Defendants own, control, and/or operate these wholly illegal websites—and likely others that Plaintiffs have not yet discovered—through which Defendants have distributed infringing copies of Plaintiffs' works and used reproductions of Plaintiffs' trademarks to deceive consumers.  *Id.* ¶¶ 102, 107; Declaration of Dan Seymour ("Seymour Decl.") ¶ 4.  Indeed, the apparent sole objective of Defendants' infringing sites is to make money from infringement and the facilitation of cheating. Compl. ¶ 108; Seymour Decl. ¶¶ 4, 17; *see also* Publishers' Decls. ¶¶ 9, 16, 17.

Defendants' sites advertise that they deliver digital copies of the test banks, ISMs, and/or textbooks instantly and/or that the files delivered are compatible with any e-reader, tablet, or similar device.  Compl. ¶ 111; Seymour Decl. ¶ 8.  Through purchases and downloads from Defendants, including for Plaintiffs' Authentic Works on Exhibit A, Plaintiffs have confirmed that, just as Defendants advertise, they distribute unauthorized electronic copies of Plaintiffs' test banks, ISMs, and/or textbooks.  *Id.*; Publishers' Decls. ¶ 12.  Plaintiffs made some of these purchases from a location in New York.  Compl. ¶ 115; Seymour Decl. ¶ 13.

In addition, Defendants' sites often have individual listings, product pages, or similar advertisements ("product pages") for the test banks, ISMs, and/or textbooks that they sell. Compl. ¶ 111; Seymour Decl. ¶ 7.  On some Defendants' product pages, Defendants display Plaintiffs' registered trademarks on a cover image of the test bank, ISM, and/or corresponding textbook.  *Id.*  On other Defendants' product pages, Defendants display Plaintiffs' trademarks in the marketing information or and description of the product.  *Id.*  Plaintiffs have reviewed evidence collected from these product pages and confirmed that they include unauthorized and identical or substantially indistinuishable reproductions of Plaintiffs' trademarks.  *Id.*; Publishers' Decls. ¶ 13.

Defendants' infringing sites are highly interactive.  Compl. ¶ 109; Seymour Decl. ¶¶ 6. On the sites, purchasers or prospective purchasers can often scroll through or search for listings of the unauthorized digital copies of Plaintiffs' works that Defendants have made and sell.  *Id.* Purchasers or prospective purchasers can also interact with the sites, such as by communicating with Defendants, viewing information on their catalogues of items to buy, and completing their transactions.  *Id.*  At the touch of a few keystrokes, and armed with a credit card or other means of online payment, such as a PayPal account, a visitor can purchase and download unauthorized

copies of Plaintiffs' works.  *Id.*

Because Defendants hide behind the anonymity of the internet, Plaintiffs do not currently know their true identities and locations.  Compl. ¶¶ 96, 117-18; Publishers' Decls. ¶ 14.  On their infringing sites, Defendants provide generic email addresses as contacts, on which they rely to communicate with customers and service providers.  Compl. ¶¶ 117-18; Seymour Decl. ¶ 12. The infringing sites do not identify Defendants' true names on their Contact Us pages or otherwise.  Compl. ¶ 117; Seymour Decl. ¶ 16.  Further, most do not include a physical address on the site, and those that do typically include fake addresses.  *See* Compl. ¶ 118; Seymour Decl. ¶ 16.[2]  *Id.*

While pirates such as Defendants are notorious for and adept at hiding their identities and locations, including making changes to their service providers to avoid being shut down, Defendants currently utilize the services of a number of companies in the United States in connection with their infringing activities.  Compl. ¶ 113; Seymour. Decl. ¶ 12.  In particular, certain Defendants obtain domain name registration services from companies such as GoDaddy and NameCheap; web hosting services from companies such as DigitalOcean, Google, and Shopify; proxy services from Cloudflare; cloud storage services from companies such as Google; and online advertising services from companies such as Google and Microsoft.  *Id.*  Further, Defendants typically use payment processors, such as PayPal and Stripe, to process payments for the infringing materials they sell.  *Id.*  Defendants then transfer their ill-gotten proceeds to banks in the United States and abroad.  *Id.*

---

[2] Some Defendants have gone so far as to create fake online "storefronts" to display innocuous inventory while hiding the illegal products they sell from the casual visitors.  *Id.*  In those instances, the purchaser or prospective purchaser will typically locate the infringing site and the product page for the ISM, test bank, and/or textbook via a link in an online advertisement or search result.  *Id.*  In this manner, some Defendants avoid Plaintiffs being able to see any infringing material beyond the one link that they previously identified.  *Id.*

By the very nature of their illegal businesses, Defendants are well aware of the enormous scope of the infringement and cheating that they cause.  Compl. ¶ 116.  Defendants knowingly and intentionally designed, built, and operate businesses devoted to selling copies of others' proprietary works, including Plaintiffs' copyrighted works.  *Id.*  Defendants have done so, and continue to do so, with the full recognition that they have not been granted any license, permission, authorization, or consent to copy or distribute Plaintiffs' works.  *Id.*  Defendants also know that they are not authorized to use Plaintiffs' trademarks in advertising and selling their goods and services.  *Id.*  And Defendants are fully aware that their actions corrupt the educational process.  *Id.*  Defendants shamelessly advertise to students that they are providing access to materials that professors and instructors will use for homework, exams, and other assessment purposes.  *Id.*  Defendants' illegal actions benefit them alone, for their commercial purposes and gain.  Compl. ¶¶ 116, 120.

Defendants continue to actively operate and grow their businesses, including by adding new products to their infringing sites, which, of course, represent nothing more than additional infringements.  Compl. ¶ 119; Seymour Decl. 17.  Moreover, the illicit inventories of most infringing sites are substantial.  Compl. ¶ 119; Seymour Decl. ¶ 9.  Some sites contain or provide access to hundreds or thousands of unauthorized digital copies of copyrighted works.  *Id.*

C.   **Defendants' Infringement Causes Substantial Harm.**

Defendants have caused Plaintiffs significant and substantial harm, including in this District, and Defendants are aware that they have caused Plaintiffs to suffer such harm.  Compl. ¶¶ 98, 119.  Plaintiffs have invested significant monies to publish their works.  Compl. ¶ 120; Publishers' Decls. ¶ 15.  Plaintiffs make substantial investments, for example, in content creation and in the promotion of their copyrighted works published under their trademarks.  *Id.*  Plaintiffs would suffer serious financial injury if their copyrights and trademarks were not enforced.  *Id.*

Defendants' copying, sale, and distribution of Plaintiffs' test banks, ISMs, and/or textbooks steals the fruits of Plaintiffs' and their authors' creative efforts and monetary investments. *Id.* Defendants' sales facilitates further dissemination and infringement, as Defendants' unauthorized copies of Plaintiffs' works are distributed with no way to prevent their viral downstream dissemination. Compl. ¶ 120; Seymour Decl. ¶ 17. With respect to test banks and ISMs, Defendants' infringement reduces interest among teaching professionals to adopt the associated textbooks for use in their classes, thus diminishing the value of not only the test banks and ISMs themselves, but also the value of the associated textbooks. Compl. ¶ 120; Publishers' Decls. ¶¶ 15-16. A substantial decline in Plaintiffs' income could cause Plaintiffs to cease publishing one or more deserving books. Compl. ¶ 120; Publishers' Decls. ¶ 15. This would adversely impact the creation of new works, scholarly endeavors, and the education of students in the United States. *Id.*

Moreover, Defendants' sales corrupt the educational process by facilitating cheating. Compl. ¶ 121; Publishers' Decls. ¶ 17. Students who cheat to obtain better grades instead of studying and asking questions are depriving themselves of valuable learning, taking unfair advantage of students who do not cheat, and depriving their professors or instructors of valuable feedback. *Id.* And when the utility and value of Plaintiffs' test banks and ISMs are diminished, even greater demands are placed on educators, causing them to re-invent the wheel and cutting into valuable time that could be used to otherwise enhance the educational experience. *Id.* As Plaintiffs' supplemental materials comprise a key part of the educational process, when they are copied and distributed without authorization, the result is also harm to Plaintiffs' reputations in the educational communities they serve and beyond. *Id.*

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION.

Prior to discovery, a plaintiff need only allege facts sufficient to create a prima facie showing of personal jurisdiction.[3]  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("'[A] plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990)); *see also Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d at 196 (Though a "plaintiff bears the burden of establishing jurisdiction over the defendant by a preponderance of the evidence, the plaintiff need make only a *prima facie* showing that jurisdiction exists prior to the holding of an evidentiary hearing.").

There are two components to personal jurisdiction over a non-domiciliary[4] in a case involving a federal question.  *See, e.g., Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).  The first is the forum's long-arm statute, and the second is constitutional due process.  *See id.* at 163-64.  In this case, New York's long-arm statute provides personal jurisdiction over Defendants under § 302 (a)(1) and (3) of the New York Civil Practice Law and Rules ("C.P.L.R."), and such jurisdiction satisfies constitutional due process requirements.

Here, New York's long-arm statute is satisfied on multiple grounds, including C.P.L.R. § 302(a)(1).  Section 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . .  who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" and the cause of action arises from such acts.  C.P.L.R. §

---

[3] The Court possesses original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a).

[4] Defendants' true locations are unknown, and they may in fact be located in New York.

302(a)(1).[5]  Plaintiffs have alleged that Defendants own and operate highly interactive websites through which they sell and offer to sell goods, including to customers in New York.  *See* Compl. ¶¶ 98, 109.  Although not required to satisfy Section 302(a)(1), some defendants have also sold infringing works directly to Plaintiffs in New York.  *See* Seymour Decl. ¶ 13. Defendants' online activities form the very basis of Plaintiffs' copyright and trademark infringement claims and, thus, support personal jurisdiction over Defendants in New York.

Indeed, Defendants conduct their infringing sales through websites that are continuously accessible to New York consumers.  *Id.* ¶ 6.  Operating a storefront on a highly interactive website can provide the basis for exercising personal jurisdiction under New York's long-arm statute.  *See McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*,  295 F. Supp. 3d 404, 411-12 (S.D.N.Y. 2017) ("[S]ales to New York customers through online marketplaces constitute relevant minimum contacts, even if not all of those sales were counterfeit or of Plaintiffs' textbooks"); *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt C*o., No. 15 Civ. 8459, 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) (citing *Chloe,* 616 F.3d at 170 (finding defendant's operation of a highly interactive website plus shipments of goods into New York sufficient for personal jurisdiction)); *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458 (JS)(ETB), 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012) (finding personal jurisdiction and noting that "if a website is interactive and allows a buyer in New York to submit an order online, courts

---

[5] *See also Warner Bros. Entm't v. Ideal World Direct*, 516 F. Supp. 2d 261, 266 (S.D.N.Y. 2007) (finding personal jurisdiction in copyright infringement case over defendant who operated websites which "transmit[ted] files to customers in exchange for membership fees") (citing *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)); *see also Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931 (WHP), 2008 WL 4450259, at *3-4 (S.D.N.Y. Sept. 29, 2008) (finding personal jurisdiction in copyright infringement case over defendant who operated interactive website that provided users with software, transferred music files to customers, and allowed the exchange of emails, where such activity occurred with New York users and formed the basis for plaintiffs' claims).

typically find that the website operator is 'transacting business' in New York") (citations omitted).  Plaintiffs' claims are based on Defendants' sales and advertisements on these Sites; thus Defendants are subject to personal jurisdiction in New York.

In addition, C.P.L.R. § 302(a)(3) is satisfied.  This provisions allows for personal jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  C.P.L.R. § 302(a)(3).  Here, as Plaintiffs allege, Defendants committed copyright and trademark infringement, which sound in tort.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 164 (N.Y. 2011).  Moreover, the situs of Plaintiffs' injury is New York, where the majority of Plaintiffs have their principal place of business and where all Plaintiffs have business locations.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 501 (2d Cir. 2011) (holding that where a New York corporation's copyrights are infringed via the Internet, the situs of the corporation's injury is New York).

Further, through their online businesses, Defendants derive substantial revenue from interstate or international commerce, and Defendants expected or should reasonably have expected their infringing acts to have consequences in New York, where three Plaintiffs have their principal place of business and the other two Plaintiffs have locations.  *See McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) ("It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York . . . .").  And because Defendants conduct their illegal business over the internet, Defendants necessarily derive substantial revenue from interstate or international commerce.  Compl. ¶ 98.  Accordingly, the Court has personal

jurisdiction over Defendants under C.P.L.R. § 302(a)(3).

A separate due process analysis is unnecessary here.  New York's long-arm statute does not extend to the limit of due process.  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of C.P.L.R. § 302(a) meets due process requirements.").  Nonetheless, the requisite minimum contacts are clearly satisfied under the circumstances of this case such that asserting personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Plaintiffs have made a prima facie showing that Defendants purposely availed themselves of the New York forum by operating highly interactive, wholly infringing websites that are continuously available to New York customers and/or have sold infringing works, including to Plaintiffs, in New York.  *See* Compl. ¶¶ 98, 115; Seymour Decl. ¶¶ 6, 10, 13.  Further, based on their New York presence, Plaintiffs have also made a prima facie showing that Defendants' infringement has caused them to suffer injury in New York.  *See id.*

## II.     DEFENDANTS MEET THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Both the Copyright Act and the Lanham Act vest the Court with the power to grant Plaintiffs' request for a temporary restraining order ("TRO").  17 U.S.C. § 502(a) (the court has authority to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"); 15 U.S.C. § 1116(a) (courts "have power to grant injunctions, according to the principles of equity" in trademark infringement cases); *see also* Fed. R. Civ. P. 65(b).  Courts in this District have recently and frequently granted TROs and preliminary injunctions, in forms substantially similar to the relief sought here, in cases involving piracy or counterfeiting.  *See, e.g.,* Cases cited *supra* at n.1, Exs. 1-9 to Fleischman Decl.

Both TROs and preliminary injunctions require Plaintiffs to establish: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) that they are "likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [their] favor" ("decidedly" so where there are "serious questions going to the merits"); and (4) the "'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting,* 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted). In this case, the Court should grant the requested relief because Plaintiffs can demonstrate each of the above elements.

## A. **Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

A plaintiff need not show that there is a likelihood of success on the merits of all of their claims for relief; rather, they must show a likelihood of success on the merits of at least one of their claims. *Yurman Design Inc. v. Chaindom Enters.*, No. 99-cv-9307-JFK, 1999 WL 1075942, at *5 (S.D.N.Y. Nov. 29, 1999). In this case, however, Plaintiffs are likely to prevail on both their claims for copyright infringement and trademark counterfeiting.

### 1) **Copyright Infringement**

There is no question that Defendants are infringing on Plaintiffs' copyrights. The Copyright Act provides, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." 17 U.S.C. § 501. To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). The word "copying" means an infringement of any of the copyright holder's exclusive rights in its original work, including the reproduction and distribution rights. *Arista Records LLC v. Doe*, 604 F.3d 110, 117 (2d Cir. 2010) (citing *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th. Cir. 2001)); 17 U.S.C. § 106.

Here, Plaintiffs have established that they own or exclusively control valid copyrights in the Authentic Works, which they have registered with the U.S. Copyright Office.  Compl. ¶ 105; Publishers' Decls. ¶ 7; *see* 17 U.S.C. § 410(c) (a certificate of registration with the U.S. Copyright Office obtained prior to commencing a civil action creates a *prima facie* case that the copyright is valid).  The Authentic Works also contain copyrightable protected expression.  *See, e.g.,* Publishers' Decls. ¶ 6 (discussing "countless decisions [that] are made concerning answer choices, wording, examples, approach, depth, and other substantive details" in test banks and ISMs); *see also* Compl. ¶ 103 (same).

Plaintiffs have also established that Defendants, without permission from Plaintiffs, reproduced and distributed the Authentic Works.  Compl. ¶¶ 110, 124; Publishers' Decls. ¶ 9. Through purchases or downloads of copies of the Authentic Works that Plaintiffs obtained from Defendants' infringing websites, Plaintiffs have confirmed that Defendants reproduce and distribute infringing, electronic copies of their copyrighted works.  Compl. ¶¶ 111, 115; Publishers' Decls. ¶ 12, Seymour Decl. ¶¶ 13.  Accordingly, Plaintiffs have shown a likelihood of success on the merits of their copyright infringement claims.

### 2)      Trademark Counterfeiting

To prevail in a trademark counterfeiting or infringement action under 15 U.S.C. § 1114(1), a plaintiff must show: (1) it has a valid mark that is entitled to protection under the Lanham Act; (2) the defendant used the mark; (3) in commerce; (4) in connection with the sale or advertising of goods or services; (5) without the plaintiffs' consent; and (6) the defendant's use of the plaintiff's mark is likely to cause confusion as to the affiliation, connection, or association of defendant with plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods, services, or

commercial activities by plaintiff.  *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005).

Although courts typically apply the eight-factor *Polaroid* test to determine whether there is a likelihood of confusion between the marks (*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)), "where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing."  *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (quoting *Burberry Ltd. v. Euro Moda, Inc.*, No. 08-cv-5781-CM, 2009 WL 1675080, at *5 (S.D.N.Y. June 10, 2009); *Lorillard Tobacco Co. Jamelis Grocery, Inc.* 378 F. Supp. 2d 448, 454-55 (S.D.N.Y. 2005)).  A counterfeit mark is defined as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, Plaintiffs have established that they own or exclusively control their respective Marks listed on Exhibit B to the Complaint, which are registered with the U.S. Patent and Trademark Office.  Compl. ¶¶ 106, 130, Publishers' Decls. ¶ 8.  Plaintiffs have also established that Defendants (as set forth on Exhibit B), without authorization, and in connection with sale, offering for sale, and/or advertisement of Plaintiffs' works, have used identical or substantially indistinguishable copies of Plaintiffs' Marks.  Compl. ¶¶ 106, 112; Publishers' Decls. ¶ 10, 13.  In this case, since the Marks being used are counterfeit, Plaintiffs need not demonstrate any likelihood of confusion, which is presumed.  Based on the foregoing, Plaintiffs are likely to succeed on the merits of their trademark counterfeiting claims.

**B.**      **Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant Immediate Relief.**

Irreparable injury in copyright suits can be harm that "occurs to the parties' legal interests" and that "cannot be remedied after a final adjudication."  *Salinger*, 607 F.3d at 81

16

(footnote omitted).  Harm may be irreparable where the loss is difficult to replace or measure or where plaintiffs should not be expected to suffer the loss, both of which apply here.  *See id.* (types of irreparable harm include threats of market confusion, loss of goodwill, loss of ability to control one's reputation, and facing the "notoriously difficult" prospect of proving loss of sales); see also *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 335 (S.D.N.Y. 2011).  The Court also considers harm to the public when determining whether to issue a preliminary injunction—again which is the case here, as Defendants' infringing activity corrupts the educational process.  *3M Co. v. Performance Supply, LLC*, No. 20-cv-02949-LAP-KNF, 2020 WL 2115070, at *7 (S.D.N.Y. May 4, 2020).  Although courts may not "presume irreparable harm," *Salinger,* 607 F.3d at 82, courts have consistently found that harm can be irreparable, and adequate remedies at law lacking, where, absent an injunction, the defendant is likely to continue to infringe.  *See Complex Sys., Inc. v. ABN Amro Bank N.V.,* No. 08 Civ. 7497 (KBF), 2014 WL 1883474, at *12-13 (S.D.N.Y. May 9, 2014).

There can be little doubt that Plaintiffs and the public will suffer irreparable harm unless this Court issues a temporary restraining order and ultimately a preliminary injunction pending the resolution of this case.  Defendants deliberately operate businesses devoted to the unauthorized reproduction and distribution of Plaintiffs' works.  Compl. ¶¶ 107-08; Publishers' Decls. ¶ 11.  Defendants' infringing activities are extensive, fluid, and occur behind closed doors.  *See* Fleischman ¶ 4.  By making and selling unauthorized copies of Plaintiffs' test banks and/or ISMs, Defendants diminish their value, as well as the value of the corresponding textbooks, and threaten textbook adoptions.[6]  Compl. ¶101; Publishers' Decls. ¶ 16.

---

[6] When the utility and value of test banks and ISMs are diminished, even greater demands are placed on educators, as discussed above.  It is not uncommon for professors or instructors who have adopted Plaintiffs' textbooks to express concern to them about the availability of test banks

In short, Defendant's infringing activities cause Plaintiffs an indeterminable amount of financial loss, impacting not only Plaintiffs' businesses, but stealing their authors' creative efforts and investments in the works.  Compl. ¶ 120; Publishers' Decls. ¶¶ 15-16; Fleischman ¶ 4.  A substantial decline in their income could also impact Plaintiffs' future publications, which, in turn would impact scholarly endeavors and the education of students in the United States.  *Id.*  And as Plaintiffs' supplementary materials comprise a key part of the educational process, when they are copied and distributed without authorization, the result is also harm to Plaintiffs' reputations in the educational communities they serve and beyond.  Compl. ¶ 121; Publishers' Decls. ¶ 17.

Moreover, and critically, Defendants' sales undermine the educational process in the United States by brazenly facilitating and encouraging cheating.  Compl. ¶ 121; Publishers' Decls. ¶¶ 16-17.  Students who cheat deprive themselves of valuable learning; place students who play by the rules at an unfair advantage and cause them to lose out on better grades, scholastic accolades and awards, and the like; and deprive professors and instructors of valuable feedback and render more difficult their preparation of exams and assignments.  Compl. ¶ 121; Publishers' Decls. ¶ 17.  Cheating also results in unqualified students entering the workforce.  *Id.*  This problem is even further heightened in the medical field, for example, where qualifications directly impact health and safety.  McCann Decl. ¶ 17; Naggar Decl. ¶ 17.

Finally, absent an injunction, Defendants will no doubt continue infringing—indeed, that is the whole point of their illegal businesses.  Compl. ¶¶ 116, 119; Fleischman Decl. ¶¶ 2, 4, 5.  Given the anonymous and blatantly illegal manner in which Defendants conduct business, Defendants are also likely to try to render themselves judgment proof.  *See id.*  These facts easily warrant temporary and preliminary injunctive relief.

---

and/or ISMs online and seek assistance to help mitigate the harm to the pedagogical process caused by the illegal distribution of these materials.  Publishers' Decls. ¶ 17.

### C.     **Plaintiffs Satisfy the Remaining Two Equitable Factors.**

The remaining two factors decidedly support Plaintiffs' requests for injunctive relief.  In

terms of the balance of hardships, "it is axiomatic that an infringer of copyright cannot complain

about the loss of ability to offer its infringing product."  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287

(2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585 (2013) (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp.

2d 594, 621 (S.D.N.Y. 2011)); *see also North Face Apparel Corp. v. Moler,* No. 12-Civ.-6688

(JGK) (GWG), 2015 WL 4385626, at *24 (S.D.N.Y. July 16, 2015) (enjoining sellers of

infringing goods).

Further, injunctive relief to protect Plaintiffs' copyrights would serve the public interest.

"The public has a compelling interest in protecting copyright owners' marketable rights to their

work."  *WPIX*, 691 F.3d at 287.  Indeed, "[i]nadequate protections for copyright owners can

threaten the very store of knowledge to be accessed; encouraging the production of creative work

thus ultimately serves the public's interest in promoting the accessibility of such works."  *Id.*

The public interest would also be served by an injunction to prevent Defendants' use of

counterfeit reproductions of Plaintiffs' trademarks, as it would help ensure that the public is not

deceived.  *See Laboratorios Rivasm, SRL v. Ugly & Beauty, Inc.*, No. 11-cv-5980-RA-JLC, 2013

WL 5977440, at *12 (S.D.N.Y. Nov. 12, 2013) ("[T]he public has an interest in not being

deceived—in being assured that the mark it associates with a product is not attached to goods of

unknown origin and quality.").  And Plaintiffs' public interest argument is all the more

compelling here, where Defendants' infringing conduct compromises the educational process in

the United States.  *See* Compl. ¶ 121; Publishers' Decls. ¶ 17.

Accordingly, all of the factors to be considered in issuing a TRO and a preliminary

injunction favor Plaintiffs, and Plaintiffs have met their burden to show that injunctive relief

enjoining Defendants from further infringement of Plaintiffs' copyrights and trademarks is

warranted.

## III.    PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING THE TRANSFER OF DEFENDANTS' ASSETS.

It is well-settled that a federal district court may issue injunctive relief to preserve assets as security for a potential monetary judgment.  It is also clear that one is warranted in this case.

### A.    The Court Possesses Ample Authority Under the Federal Rules and Its Inherent Equitable Powers to Attach Defendants' Assets.

The Court has authority to grant the requested relief under the Federal Rules of Civil Procedure.  The Court may freeze Defendants' assets for a potential judgment through a Rule 65 preliminary injunction.  *See, e.g., Republic of Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir. 1986) (preventing transfer or encumbrance of properties that would place them beyond reach or prevent their reconveyance); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.,* 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) ("Preliminary injunctions are . . . appropriate to thwart a defendant from making a judgment uncollectible."); *cf. In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985) ("[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring their] assets . . . .") (quotations and citations omitted).

Similarly, independent of its authority under the Federal Rules of Civil Procedure, the Court also has a "great deal of discretion" in "fashioning a remedy pursuant to its inherent equitable powers."  *Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC*, 587 F. Supp. 2d 548, 570 (S.D.N.Y. 2008).  "[A] preliminary asset freeze is authorized by the district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief.  Where profits are available as a final remedy – as they are under 17 U.S.C. §

504 – a preliminary asset freeze is an appropriate provisional remedy." *Lions Gate Films Inc. v. Does*, 2:14-CV-06033-MMM, 2014 WL 3895240, at *7 (C.D. Cal. Aug. 8, 2014). "[W]here plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets." *Cengage Learning, Inc. v. Doe 1*, 18-CV-403 (RJS), 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018) (District courts have authority to freeze a defendant's assets insofar as they could be used to satisfy an award of profits under both the Copyright Act and the Lanham Act). Here, Plaintiffs seek an equitable accounting and disgorgement of Defendants' illicit profits under the Copyright Act. The Court may exercise its equitable authority to preserve the status quo and maintain its ability to provide an equitable remedy. *See id*.

In terms of the equitable factors, Plaintiffs have already shown that they are likely to succeed on the merits. *See supra* Section II.A. Moreover, irreparable harm exists where "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999). Accordingly, a demonstration of a defendant's "intent to frustrate any judgment on the merits" qualifies as a showing of "irreparable harm." *Sea Carriers Corp. v. Empire Programs, Inc.,* No. 04 Civ. 7395 (RWS), 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006); *Experience Hendrix, LLC v. Chalpin,* 461 F. Supp. 2d 165, 169-70 (S.D.N.Y. 2006) (finding irreparable injury showing satisfied where "there is substantial reason to believe that defendants, unless enjoined, will continue to attempt to frustrate plaintiff's efforts to collect the judgment").

Here, the circumstances overwhelmingly evidence Defendants' intent to frustrate the enforcement of a judgment. Defendants deliberately set up businesses that exist for the sole

purpose of selling pirated copies of publishers' copyrighted works.  In the course of their illicit

operations, Defendants have gone to great lengths to hide their identities.  They do not run

legitimate businesses, which typically have readily identifiable assets that may be used to satisfy

judgments.  Rather, given Defendants' aggressive infringement, there is a strong chance they

may drain or move accounts in an effort to be "judgment proof," as well as conceal or dispose of

evidence of their illegal sales.  *See* Fleischman Decl. ¶¶ 4-5; *see also Elsevier, Inc. v. Does 1-10*,

No. 16-Civ.-1245 (RA), *Ex Parte* Order (Feb. 2, 2016) (Dkt. No. 13) (finding that use of aliases,

among other measures, to operate their infringing enterprise demonstrates the likelihood that, if

Defendants were to receive advance notice of the application for an injunction, "Defendants

could moot Plaintiffs' ultimate relief by moving their assets beyond the reach of the Court").

Finally, the balance of hardships and public policy considerations decidedly favor

Plaintiffs.  Without an asset freeze, Plaintiffs would suffer hardship because they are at risk of

"not be[ing] paid monies that . . . are justly due and owed" as compensation for the myriad harms

Defendants' illegal conduct has caused them.  *Quantum,* 144 F. Supp. 2d at 249; *see also Serio v.*

*Black, Davis & Shue Agency, Inc.,* No. 05 Civ. 15 (MHD), 2005 WL 3642217, at *19 (S.D.N.Y.

Dec. 30, 2005) ("A judgment of some amount" is more than "likely to be entered in plaintiff's

favor, and plaintiff bears a significant risk that defendant's assets will prove inadequate to satisfy

such a judgment.").   On the other hand, Defendants will suffer no cognizable hardship.

Defendants have no right to use the profits of an illegal enterprise to continue supporting their

unlawful activities or for personal uses.  There is no conceivable public interest in allowing

Defendants to continue causing and profiting from egregious infringement.

**B.**   **The Court Also Possesses Authority Under New York Law to Attach the Defendants' Assets.**

In addition to the federal rules and its equitable powers, this Court may act pursuant to

New York law.  Rule 64 of the Federal Rules of Civil Procedure provides, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Fed. R. Civ. P. 64.   New York law provides that a plaintiff is entitled to prejudgment attachment if it can show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in Section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  C.P.L.R. § 6212(a).

As discussed above, Plaintiffs have a cause of action and it is probable – indeed overwhelmingly likely – that Plaintiffs will succeed on the merits.[7]  *See supra* Section II.A.  As Defendants have no known counterclaims against Plaintiffs, the requirement that the amount demanded exceeds all known counterclaims is also met.  *See* Publishers' Decls. ¶ 18.  Thus, the only remaining element is whether one or more grounds for attachment provided in Section 6201 exist.

Sections 6201(1) and (3) of the C.P.L.R. each provide grounds for an attachment in this case.  Section 6201(1) provides for attachment where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state."  C.P.L.R. § 6201(1).  Section 6201(3) of the C.P.L.R. provides grounds for an attachment where the defendant, "with intent to defraud his creditors or frustrate the enforcement of a judgment that

---

[7] To show a probability of success on the merits for purposes of an application for an order of attachment, a plaintiff must present facts sufficient to establish a *prima facie* case.  *See Considar, Inc. v. Redi Corp., Establishment*, 238 A.D.2d 111, 111, 655 N.Y.S.2d 40, 41 (N.Y. App. Div. 1997).  "Although evidentiary facts making out a *prima facie* case must be shown, plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated."  *Id.*  (citation omitted).

might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts . . . ."  C.P.L.R. § 6201(3).

Here, Defendants' locations are unknown, they run illegal businesses, and they go to great lengths to do so anonymously.  *See* Compl. ¶¶ 10-95, 117, 118.  Once given notice, Defendants can be expected to render much more difficult even partial satisfaction of any judgment.  *See* Fleischman Decl. ¶¶ 4-5.  Thus, attachment here is appropriate under C.P.L.R. §§ 6201 (1) and (3).  *See ITC Entm't, Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221-22 (2d Cir. 1983) (upholding an order of attachment under § 6201 (1) based on sporadic contacts with New York, insufficient assets to satisfy the potential judgment, and questionable business practices); *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting plaintiff's motion for prejudgment attachment under C.P.L.R. 6201 where defendants are "foreign individuals and corporations who have both incentive and capacity to hide their assets"); *Graubard Mollen Dannett & Horowitz v. Kostantinides,* 709 F. Supp. 428, 432 (S.D.N.Y. 1989) (finding attachment under C.P.L.R. § 6201(1) appropriate where plaintiff sought to attach defendant's bank account, because "[t]hese accounts, by nature are liquid and can be easily transferred from the jurisdiction by a simple telephone call"); *cf. JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* 306 F. Supp. 2d 482, 487 (S.D.N.Y. 2004) ("Because direct evidence of an intent to defraud or to frustrate the enforcement of a judgment is rare, the intent required under C.P.L.R. § 6201 (3) is usually inferred from the circumstances.").

### C.      *Ex Parte* Relief Is Warranted.

If Defendants receive advance notice of the temporary restraining order attaching Defendants' assets, Defendants will have the opportunity to moot Plaintiffs' ultimate relief simply by moving their assets to another account beyond the reach of this Court.  *See* Fleischman

Decl. ¶ 4.  Accordingly, based on the circumstances of this case, Defendants' assets associated with their illegal activities should be temporarily restrained or attached on an *ex parte* basis. This Court has the authority to proceed in this fashion.

Rule 65 of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without written or oral notice if, by affidavit or verified complaint, Plaintiffs show that "immediate and irreparable injury, loss, or damage will result … before the adverse party can be heard in opposition . . . ."  Fed. R. Civ. P. 65(b); *see also U2 Home Entm't, Inc. v. Bowery Music City, Inc.,* No. 03 Civ. 8909 (RJH), 2003 WL 22889738, at *1 (S.D.N.Y. Dec. 8, 2003).  New York law similarly authorizes the Court to enter a temporary order of attachment without notice.  Section 6210 of the C.P.L.R. provides, "Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee as provided in subdivision (b) of section 6214."  C.P.L.R. § 6210; *see also Libancell S.A.L. v. Republic of Leb.*, No. 06 Civ. 2765 (HB), 2006 WL 1321328, at *2 (S.D.N.Y. May 16, 2006).

Consistent with such *ex parte* relief, and given the circumstances of this case, the Court should also order that third parties subject to the temporary restraining order pursuant to Federal Rule of Civil Procedure 65(d) and third parties from whom Plaintiffs seek expedited discovery (discussed below) must not provide Defendants with notice of Plaintiffs' Application and the Court's order until after Defendants have been served.  Indeed, if Defendants are given such advance notice, they are likely to secrete, conceal, transfer, or otherwise dispose of the proceeds from and evidence of their sales of infringing test banks, ISMs, and/or textbooks, and the asset freeze will be moot.  On similar bases, courts in the District have entered such orders in infringement cases brought by Plaintiffs.  *See McGraw Hill LLC v. Does 1-63*, Case No. 20-cv-

6368 (S.D.N.Y), Aug. 13, 2020 Order at 8 (Dkt. No. 5); Cengage *Learning, Inc. v. Trung Kien*

*Nguyen*, Case No. 20-cv-769-JGK (S.D.N.Y), Jan. 29, 2020 Order at 6 (Dkt. No. 11).

      **D.**    **The Court Should Require No Bond or, in the Alternative, a Minimal Bond.**

      It is well established in the Second Circuit that Rule 65(c) invests the district court wide

discretion as to the amount of security required, if any.  *See Doctor's Assocs. v. Distajo*, 107

F.3d 126, 136 (2d Cir. 1997).  In particular, the court may "dispense with the bond requirement

'where there has been no proof of likelihood of harm.'"  *See id.* (quoting *Doctor's Assocs. v.*

*Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)).

      Plaintiffs respectfully submit that the Court should exercise its discretion to dispense with

the filing of a bond in this case.  As discussed above, there is no realistic likelihood of harm to

Defendants in this case because there is no evidence that Plaintiffs' requested injunction will

cause any harm other than stopping Defendants' unlawful conduct.

## IV.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY.

      Plaintiffs seek an order authorizing limited discovery targeted at identifying and locating

Defendants, identifying Defendants' assets that are the proper subject of the requested asset

freeze, and preserving critical evidence of Defendants' infringing sales.  While discovery

generally must await the parties' Rule 26(f) conference, the Court can order otherwise.  Fed. R.

Civ. P. 26(d)(1).  This is the classic case where such an order is not only appropriate, but

necessary.  Plaintiffs cannot conduct a Rule 26(f) conference because they do not know the

Defendants' true names and locations.  Moreover, the discovery is necessary to prevent

Defendants from frustrating Plaintiffs' ability to obtain the appropriate equitable and monetary

relief to which they are entitled.

      Courts in this district apply a "flexible standard of reasonableness and good cause" to

determine whether to grant a motion for expedited discovery prior to a Rule 26(f) conference. *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash,* 233 F.R.D., at 325).  "Courts in this district have found 'good cause' for expedited discovery to determine the identity of John Doe Defendants where the plaintiff has stated a *prima facie* case and is unable to identify the defendants without a court-ordered subpoena."  *Admarketplace, Inc. v. Tee Support, Inc.,* No. 13 Civ. 5635 (LGS), 2013 WL 4838854, at *3 (S.D.N.Y. Sept. 11, 2013); *see also Malibu Media, LLC v. Doe,* No. 12 Civ. 2950 (JPO), 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012) (finding good cause for expedited discovery "because, without it, Plaintiff will not be able to ascertain the identities of the Doe defendants or to effect service upon them").  Further, expedited discovery "is routinely granted in actions involving infringement."  *Benham Jewelry Corp. v. Aron Basha Corp.*, 97 CIV. 3841 (RWS), 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997) (citing cases); *see also* TRO cases cited at n.1 *infra*.

Without the ability to discover the true names and locations of Defendants, Plaintiffs cannot name and serve the proper defendants and will be unable to litigate their claims.  There is simply no other means for Plaintiffs to ascertain Defendants' true identities.  Moreover, to effectuate an asset restraint, Plaintiffs must be able to identify the accounts holding the proceeds of Defendants' infringing sales.  Similarly, any injunctive relief Plaintiffs are granted will be hollow if Defendants are able to simply and easily move their operations to new websites or use new domain names to carry out their infringing sales.  The requested discovery will also provide a more complete record for the Court in connection with its decision on a preliminary injunction. *See Twentieth Century Fox Film Corp. v. MOW Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery in infringement action because "[i]nquiry . . . on an expedited basis may very well lead to evidence of continuing infringement by this defendant or

others; it may also lead to the discovery of future plans to infringe or the discovery of other infringing merchandise").  Accordingly, Plaintiffs have a substantial need for the requested expedited discovery.

## V.    ALTERNATE SERVICE BY ELECTRONIC MEANS IS APPROPRIATE HERE.

Plaintiffs seek permission to serve Defendants by email to their respective email addresses identified as a result of Plaintiffs' purchases from and interactions with their infringing websites.  The Court may authorize alternate service under the applicable federal and New York rules.  If any Defendant is located in the United States, New York's service of process rules apply.  Alternately, if Defendants are located outside the United States, Federal Rule of Civil Procedure 4(f) applies.  Applying either New York law for individuals in the United States or Federal Rule 4(f) for individuals abroad, alternate service, particularly service by email, is available here and within the Court's discretion to order.

### A.  **Email is the Best Method of Serving the Doe Defendants**.

Though Defendants hide behind the anonymity of their sites, there is no doubt that they regularly use email for purposes of operating the sites.  Compl. ¶ 117; Seymour Decl. ¶ 16. Plaintiffs have compiled a list of Defendants' currently known email addresses for purposes of their Application (and to include with the Proposed *Ex Parte* Order to provide identifying information to third parties).  *See* Seymour Decl. Ex. 2; Proposed *Ex Parte* Order, App. B. While this list will grow in discovery, it is appropriate for use for service now, as it includes one or more email addresses for each Defendant that the Defendant has advertised as its contact information on the infringing site, used to communicate with Plaintiffs when they purchased or downloaded infringing content from the site, and/or used in connection with receiving payment for such purchases.  Compl. ¶ 117; Seymour Decl. Ex. 2.

28

Under these circumstances, email is not only a reliable method of providing Defendants with actual notice of this suit and the papers filed herein, it is the best method.  Accordingly, service of the Complaint, the papers associated with this filing, and all subsequent case documents that must be served[8] should be served upon the Doe Defendants by those email addresses listed on Ex. 2 of the Seymour Decl.  Plaintiffs will also update this list to add email addresses for Defendants of which they learn in expedited discovery.  In multiple similar cases in this District, Courts have granted Plaintiffs' requests for alternate service in substantially the same manner as Plaintiffs' request here.  *See* cases cited *supra* at n.1.

**B.  C.P.L.R. § 308 Authorizes Alternate Service on Individuals in the United States.**

Section 308(5) of the C.P.L.R. provides for service "in such a manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." Paragraphs one, two, and four of Section 308, which set forth traditional methods of service, require that a plaintiff know the defendants' whereabouts, i.e., a home or business address.  Because Defendants' locations are unknown, service via C.P.L.R. §§ 308(1), (2), or (4) is impracticable in this case, and the Court may order service of process via an alternate method, including by email.  Courts in New York have authorized service of process by email where, as here, service by traditional methods was impracticable.  *See, e.g. Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-04 (N.Y. App. Div. 2013) ("[B]oth New York courts and federal courts have,

---

[8] Alternate service is not limited to service of process.  *See FTC v. PCCare247 Inc.*, No. 12-Civ.-7189 (PAE), 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013) (granting "leave to serve motions and other post-complaint documents" via email and Facebook messenger); *RSM Prod. Corp. v. Fridman*, No. 06-Civ.-11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007). Plaintiffs have no physical addresses for Defendants or no confirmed addresses, because even where an address is provided on the infringing sites, they are typically fake. Seymour Decl. ¶ 16. Therefore, sending the case documents by mail would be impossible or ineffective, as Plaintiffs and the Court would have no assurance that the actual Defendants will receive the documents.

upon application by plaintiffs, authorized [e]mail service of process as an appropriate alternative

method when the statutory methods have proven ineffective.") (citing *Alfred E. Mann Living

Trust v. ETIRC Aviation S.A.R.L.*, 910 N.Y.S.2d 418, 422 (N.Y. App. Div. 2010)); *Snyder v.

Energy, Inc.*, 857 N.Y.S.2d 442, 449 (N.Y. Civ. Ct. 2007) (authorizing service by email on

defendant corporation and its president under C.P.L.R. § 308 (5) and § 311 (b) where service by

traditional means proved impracticable).

### C. Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternate Service on Individuals in a Foreign Country.

Based on Plaintiffs' experiences in similar cases involving digital piracy, it is likely that

many of the Defendants are located in foreign countries.  Seymour Decl. ¶ 16.  Federal Rule of

Civil Procedure 4 (f)(3) allows the Court to authorize service of process in a foreign country by

any "means not prohibited by international agreement as may be directed by the court," so long

as the alternative method of service is "reasonably calculated, under all circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections."  *See Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988 (GBD), 2007 WL

725412, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); *see also RSM Prod.

Corp.*, 2007 WL 1515068 at *3 ("The decision of whether to allow alternative methods of

serving process . . . is committed to the sound discretion of the district court.") (citation and

internal quotation marks omitted).

Alternate service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief.  It is

merely one means among several which enables service of process on an international

defendant."  *PCCare247 Inc.*, 2013 WL 841037, at *6-7 (internal citation omitted).  Indeed, a

plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the

Court may order service under Rule 4 (f)(3).  *Id.* at *8; *Rio Props., Inc. v. Rio Intern. Interlink,*

284 F.3d 1007, 1014-15 (9th Cir. 2002).

Alternate service of process by email is proper where, as here, the proposed method of service is not prohibited by international agreement and the nature of the defendants' business makes it the most likely method of service to provide prompt, actual notice of the plaintiffs' claims.  *See Rio Props.*, 284 F.3d at 1018.  Indeed, "when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process."  *Id.*

As discussed above, Defendants' true names and locations are unknown because Defendants have chosen to conduct their illegal businesses, and their infringing activities, anonymously over the internet.  If an international agreement was implicated, it would be the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").  However, the Hague Convention does not apply where, as here, the address of the person to be served is not known. Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known."); *see also Prediction Co. v. Rajgarhia*, No. 09-Civ.-7459 (SAS), 2010 WL 1050307, at *5 (S.D.N.Y. Mar. 22, 2010).

In the absence of an international agreement, the Court must look to Rule 4 (f)(3), which allows alternative methods for service of process, so long as the method is directed by the Court and comports with constitutional notions of due process.  *See Rio Props.*, 284 F.3d at 1016; *PCCare247 Inc.*, 2013 WL 841037, at *11; *Prediction Co.,* 2010 WL 1050307, at *3.  "By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign

countries." *Philip Morris*, at *8 (internal quotations and citation omitted).  As a result, courts have fashioned a range of alternative methods of service, including service by email.  *See, e.g., PCCare247*, at *18- 20 (ordering service by email and Facebook); *Prediction Co*., 2010 WL 1050307, at *1-5 (ordering service by sending summons and complaint to an email address previously used by defendant to communicate with plaintiff and to counsel in New York who had been in contact with defendant); *Philip Morris*, at *9-10 (ordering service by email and fax).

Email service on a defendant engaged in an illegal online business is appropriate and constitutionally acceptable in a case such as this, where Plaintiffs are unable to personally serve Defendants at physical addresses and have shown that email is the most effective means of providing Defendants with notice of the action.  *See Philip Morris*, at *9 (finding that service by email was appropriate where, as here, defendants "conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email").

"If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them." *Williams v. Advert. Sex LLC.*, 231 F.R.D. 483, 487 (N.D. W.Va. 2005) (*quoting Broadfoot v. Diaz,* 245 B.R. 713, 721 (Bankr. N.D. Ga. 2000)). Thus, email service has the greatest likelihood of reaching e-commerce merchants, particularly Defendants here, who are adept at hiding their identity and location.  *See Broadfoot*, 245 B.R. at 722 (authorizing email and fax service and noting, "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules.  Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party").  Accordingly, service on Defendants by email will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiffs'

claims.  Email will not only be effective in this case, but will be the most reliable means of providing actual notice to Defendants.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the relief requested herein.


Dated:  October 9, 2020

Respectfully submitted,

Matthew I. Fleischman

Matthew J. Oppenheim
Scott A. Zebrak
Michele A. Murphy (*pro hac vice application to be filed*)
Matthew I. Fleischman
Vivian E. Kim
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
Tel:  (202) 480-2999
matt@oandzlaw.com
scott@oandzlaw.com
michele@oandzlaw.com
fleischman@oandzlaw.com
vivian@oandzlaw.com

*Attorneys for Plaintiffs*